**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DEANNA S.,[1]

       Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

Case No. 1:22-cv-602

Bowman, M.J.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Deanna S. filed this Social Security appeal to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review.[2] For the reasons explained below, the Defendant Commissioner's finding of non-disability is REVERSED and REMANDED for further development of the record.

### I.  Summary of Administrative Record

On April 17, 2019, Plaintiff filed an application for Disability Insurance Benefits ("DIB"); on October 13, 2019, she filed an application for Supplemental Security income ("SSI").[3] In both applications, she alleged disability beginning April 9, 2019. The date of onset coincides with a psychiatric hospitalization, but she alleges disability based on both physical and mental impairments. After her applications were denied initially and upon

---

[1]Because of significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2]The parties have consented to final disposition before the undersigned magistrate judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.
[3]Plaintiff's date last insured for purposes of DIB was September 30, 2021.

reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). At an online video hearing held on August 4, 2021, Plaintiff appeared with counsel and gave testimony before ALJ Heidi Southern; a vocational expert also testified. (Tr. 32-63). On August 24, 2021, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled. (Tr. 15-26). The Appeals Council denied further review, leaving the ALJ's decision intact as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

At 24 years old, Plaintiff was considered a "younger individual" on her disability onset date and remained in that age category through the date of the ALJ's adverse decision. She was living with her father at the time of the hearing. She has a high school education, with some college, and prior unskilled work as a food service worker and as a packer, both of which were performed at the heavy exertional level. She also worked for as a tax preparer, a semi-skilled job performed at the sedentary level. (Tr. 24, 57-58). However, she has not engaged in substantial gainful activity ("SGA") since her alleged onset of disability. (Tr. 17).

The ALJ determined that Plaintiff has severe impairments of "psoriatic arthritis, lumbar spine degenerative disc disease, obesity, depressive disorder, anxiety disorder, panic disorder, bipolar disorder, borderline personality disorder, post-traumatic stress disorder (PTSD), and attention-deficit hyperactivity disorder (ADHD)." (Tr. 18). In this judicial appeal, Plaintiff does not dispute the ALJ's further determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability.

2

Considering all of Plaintiff's impairments, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of sedentary work, subject to the following non-exertional limitations:

> [T]he claimant is occasionally able to climb ramps and stairs, but is never able to climb ladders, ropes, and scaffolds. The claimant is occasionally able to balance, stoop, kneel, crouch, and crawl. She is frequently able to finger and handle with her bilateral upper extremities. The claimant may have no exposure to unprotected heights or moving mechanical parts, and would require the use of a cane for ambulation. The claimant is unable to perform work at a production-rate pace (e.g., assembly line work), but can perform goal-oriented work (e.g., office cleaner). The claimant is able to manage occasional changes in an otherwise routine work environment explained in advance to allow time for adjustment to new expectations.

(Tr. 20). Based on this RFC, the ALJ concluded that Plaintiff could not perform any of her prior work, but that she still could perform other jobs that exist in significant numbers in the national economy, including the jobs of assembler, inspector and hand trimmer. (Tr. 24-25). Therefore, the ALJ determined that Plaintiff was not under a disability.

In this appeal, Plaintiff asserts that the ALJ erred: (1) by improperly assessing Plaintiff's subjective complaints; and (2) by failing to include all relevant limitations in the hypothetical presented to the vocational expert.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe"; at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant

4

can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B.  Plaintiff's Claims**

**1.  The ALJ's Assessment of Subjective Symptoms**

Plaintiff testified to a disabling level of symptoms from the combination of three physical impairments and seven mental impairments found by the ALJ to be "severe." (Tr. 18). She endorsed extreme pain and fatigue from physical ailments, and in a function report, complained particularly of mental health symptoms that resulted in two psychiatric hospitalizations during the alleged disability period. She stated that her mental health symptoms had worsened to the point that she could no longer work despite active medication management and weekly therapy. (Tr. 245; *see also* Tr. 47-48). She testified that she left her job as a tax preparer because she was "having panic attacks multiple times a day in which I would have to excuse myself," which was getting "in the way of my work quality," as well as in the way of "my quality of life." (Tr. 42-43). She testified that despite a decrease since leaving the stress of employment, she continues to experience panic attacks "[a]t least once a week if not daily." (Tr. 49). However, the ALJ discounted Plaintiff's complaints of disabling symptoms, concluding that her subjective reports "are

5

not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22).

An ALJ's assessment of subjective symptoms is generally given great deference. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In fact, the assessment of subjective symptoms cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ's assessment of subjective symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent with</u> the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304, at *2 (October 25, 2017) (emphasis added). But SSR 16-3p was not intended to substantially change existing law. *See Banks v. Comm'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449, at *5 (S.D. Ohio Nov. 20, 2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan. 14, 2019). Whether described as a "credibility" determination or a "consistency" determination under SSR 16-3p, the ALJ must evaluate the "intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *7-8 (listing seven factors); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p. Therefore, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Considering Plaintiff's mental health complaints, the ALJ acknowledged Plaintiff's two psychiatric hospitalizations and subjective complaints of depression, anxiety, PTSD,

sleep disturbance, nightmares, anhedonia, concentration problems and suicidal ideations. But the ALJ cited four things that she found to be inconsistent with Plaintiff's claim of disabling mental health symptoms: (1) Plaintiff's medication non-compliance; (2) "normal" mental status exams; (3) agency psychological opinions, and (4) Plaintiff's daily activities. "Although the claimant has had periods of decompensation, evidence of medication non-compliance, and the claimant's ability to perform a wide range of activities of daily living indicate that overall, she remains capable of performing a range of work activity consistent with the above residual functional capacity." (Tr. 22; *see also* Tr. 24).

Plaintiff persuasively argues that the ALJ's analysis conflicts with certain requirements of SSR 16-3p. Plaintiff concedes that the ALJ's citation to the first category of evidence - medication non-compliance - is a permissible basis to discount an individual's subjective report of disabling symptoms.[4] But Plaintiff contends that the ALJ failed to fully comply with the portion of SSR 16-3p that states that the agency "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment." SSR 16-3p, 2017 WL 5180304at *9 (emphasis added). At an administrative hearing, an ALJ "may need to… ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." *Id*.  SSR 16-3p instructs adjudicators to consider all possible explanations, including whether a mental impairment or impaired judgment limits an individual's understanding or awareness of the need for consistent treatment. *Id.* at *10. After listing possible explanations for non-compliance with treatment, SSR 16-3p emphasizes: "[W]e will consider and address reasons for not pursuing treatment that are

_____

[4]Plaintiff points out that the cited record, dated January 12, 2019, precedes her disability onset date. (See Tr. 410). That said, she does not dispute that she was non-compliant during the disability period.

pertinent to an individual's case. *Id.* The regulation concludes with an articulation requirement: "<u>We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.</u>" *Id.* (emphasis added); *see also Dooley v. Comm'r of Soc. Sec.*, 656 Fed. Appx. 113, 119 (6th Cir. 2016) (holding that an ALJ must consider possible reasons why a claimant failed to seek medical treatment consistent with the degree of his or her complaints before drawing an adverse inference from the claimant's lack of medical treatment.).

Aside from a single reference to Plaintiff's admitted forgetfulness, the ALJ did not discuss the possible reasons for Plaintiff's non-compliance. (*See* Tr. 22, "the claimant has …admitted on the record that she frequently forgets to take her medications."). In response to this claim of error, the Commissioner first argues that the ALJ's "mention[]" of Plaintiff's stated forgetfulness was sufficient, standing alone, to satisfy SSR 16-3p. (Doc. 15, PageID 2404). But the ALJ's cursory "mention" does not explain **how** the ALJ considered Plaintiff's admission of forgetfulness, nor does it suggest whether the ALJ considered Plaintiff's mental impairments among the reasons for her non-compliance. Because the ALJ did not further explain how she evaluated possible reasons for Plaintiff's non-compliance, the Court finds error in the ALJ's conclusion that Plaintiff's non-compliance was inconsistent with her subjective report of disabling symptoms.

The Commissioner alternatively argues that any error was harmless on the record presented, citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (holding that harmless error analysis applied to credibility determination where there was no misapplication of a legal principle). But unlike in *Ulman*, the ALJ's error cannot easily be dismissed as harmless. For one thing, the ALJ cited to Plaintiff's medication non-compliance three times when discounting Plaintiff's subjective reports. That repeated

reference suggests that non-compliance was a key component in the adverse credibility/consistency determination. Additionally, the ALJ's analysis does not contain a single factual error like in *Ulman*, but reflects a failure to comply with the legal principle set forth in SSR 16-3p. Considering Plaintiff's ADHD diagnosis and other severe mental impairments (depressive disorder, anxiety disorder, panic disorder, bipolar disorder, borderline personality disorder, and PTSD), that could have contributed to her non-compliance, further development of the record is required.[5] *Accord Jenna B. v. Comm'r of Soc. Sec*., No. 3:21-cv-176-CHG, 2022 WL 4395682, at *11-12 (S.D. Ohio Sept. 23, 2022) (reversing and remanding in case where psychiatric admission was preceded by medication non-compliance based on forgetfulness, because evidence suggested memory and medication compliance issues due to ADHD, along with poor judgment and irrational thinking). On remand, the ALJ must explain how she considered possible reasons for Plaintiff's non-compliance with treatment.

Other aspects of the ALJ's credibility/consistency analysis add to the conclusion that remand is required. Take the second category of "inconsistent" evidence cited by the ALJ – Plaintiff's mental status findings. The ALJ reasoned that "outside of the claimant's hospitalizations, treatment notes generally show normal mental status findings." (Tr. 22; *see also* Tr. 24). But as Plaintiff points out, the vast majority of treatment notes from her weekly therapy visits between October 2019 and May 2021 reflect tangential or abnormal thought content.

---

[5]Plaintiff reported medication non-compliance preceded the increase in symptoms that led to her April 2019 psychiatric admission. (Tr. 315). She stated she uses a system of "alarms, notes, texts from family & friends" to remind her to take her medicine. (Tr. 249). She reported that she "often" forgets to shower, eat, and take care of daily hygiene, has "trouble remembering everything, often can't complete tasks or concentrate or understand directions or instructions (esp. verbal)." (Tr. 248, 252).

Additionally, a close review of the seven records specifically cited by the ALJ as reflecting "normal mental status findings" in multiple areas including "memory, insight, judgment, behavior, eye contact, speech, attention, appearance, and hygiene" lend little support for the ALJ's stated conclusion. The first record is an ER record dated April 9, 2019. (Tr. 317). Technically, the cited physical exam report does check "normal" for the "psychiatric" status components of mood, affect and judgment. But, consider context. Plaintiff's presentation at the ER that day was for severe suicidal ideations, resulting in admission for a multiday inpatient psychiatric stay. At the time, she reported missing days of medication because of being forgetful. (Tr. 315). A psychiatric assessment bearing the same April 9 date indicates "impaired" insight, judgment and thought process, with modest improvement to "questionable" insight and judgment the next day. (Tr. 337, 343).[6]

The remaining six records specifically cited by the ALJ also offer little support for her broad conclusion that Plaintiff's records reflect "normal mental status findings" in an array of categories. Four of the records cited, Tr. 591, 664, 871, and 933, reflect telephonic visits for psychiatric medication management and therefore contain no support for the ALJ's conclusion that Plaintiff had "normal" eye contact, appearance and hygiene. True, the records note that Plaintiff's speech was normal and not pressured, rate her memory as "intact" and her mood as "euthymic" in terms of her bi-polar disorder. But the records state the examiner is "unable to assess" affect and that Plaintiff's judgment and insight is only "fair." (*Id*). A sixth record cited by the ALJ reflects a telehealth visit that provides even less support, in that the provider rated Plaintiff's mood as "anxious" and

---

[6]To be fair, the record does contain some "normal" findings. By the date of Plaintiff's first psychiatric discharge, her mental status exam reflected "appropriate" insight and judgment. (Tr. 377). But the ALJ did not list that discharge record among the seven records cited for "normal" findings, despite including it in a list of records showing "mixed" reports of Plaintiff's thought, mood and affect.

her thought process as "tangential," with no reference to "normal" findings that relate to memory, insight, judgment, eye contact, speech, attention, appearance or hygiene. (Tr. 758). The seventh record cited as indicative of "normal mental status" in those areas is another physical examination record dated June 2021, three weeks after Plaintiff's second psychiatric discharge. (Tr. 998). The examiner checked "normal" under the "psychiatric" category for mood and affect, memory, and quality of voice. But the same record notes Plaintiff is "positive" for psychiatric symptoms including anxiety, depression and mood swings, despite resolution of the more acute thoughts that led to her then-recent hospitalization. (*Id.*) And again, the record is silent as to Plaintiff's eye contact, hygiene, insight and judgment.

In short, the undersigned concludes that this case must be remanded based on the ALJ's failure to comply with SSR 16-3p. Although an ALJ's subjective symptom analysis is generally entitled to great deference, the record here reflects reversible error because the ALJ ignored possible reasons for Plaintiff's medication non-compliance and overstated Plaintiff's "normal" mental status findings.

In addition to the referenced errors concerning her subjectively reported mental health symptoms, Plaintiff complains about the ALJ's analysis of her physical symptoms, especially with respect to the ALJ's reliance on her daily activities as "inconsistent" with her subjective complaints.[7] Plaintiff reported caring for her father by cooking simple meals and cleaning while he works, crocheting or knitting, using the internet, playing games online with friends, writing, reading, and watching TV. (Tr. 248-249, 251). She cannot

---

[7]Plaintiff also asserts that the ALJ mischaracterized the record when she discounted Plaintiff's subjective physical complaints based on five records that showed "normal" findings of sensation, gait and station. (Tr. 22, citing Tr. 308, 317, 350, 741, and 856). Plaintiff complains that three of the five cited records were psychiatric notes that were "not focused on physical examination findings." (Doc. 12, PageID 2383).

drive but uses public transportation to get to appointments, and shops for food up to one hour once per month. (Tr. 250). In listing her activities as inconsistent with full-time work, Plaintiff argues that the ALJ disregarded the fact that she subjectively reported a need for very frequent breaks based on pain and physical impairments. (Tr. 50, 55-56, testimony; *see also* Tr. 249, 252, function report that she needed 5-10 minute breaks after 10-minute periods of activity; Tr. 673, report to examining psychologist that she could perform housekeeping tasks in 15-minute intervals). Plaintiff also testified to sleeping more than 12 hours at a time each day and to napping for up to an additional six hours. (Tr. 52-53). She testified to having about four good days per month but at least 10 bad days where she could not get out of bed, with the rest of her days falling somewhere in between. (Tr. 54-55).

In response to Plaintiff's assertion of error concerning her subjectively reported pain complaints, the Defendant admits that Plaintiff's activities are "minimal" and that she "may not have engaged vigorously in her activities." (Doc. 15, PageID 2403). An ALJ is not required to fully accept subjective complaints if they are inconsistent with the record. Still, on remand, the ALJ should reconsider Plaintiff's subjective physical complaints.

**2. The RFC posed to the Vocational Expert**

In her second claim, Plaintiff asserts error based on the ALJ's failure to account for the amount of time Plaintiff would be off task or miss work for her weekly mental health appointments. The vocational expert testified that being "off task" up to 15% of the day would be work preclusive, as would missing 2 or more days of work per month. (Tr. 63). No medical opinion states either that Plaintiff would be "off task" much of the day or that she would miss multiple days of work each month.

12

Despite the lack of relevant medical opinion evidence, Plaintiff cites to her subjective reports that she needed 5-10 minute breaks after brief periods of activity due to pain and other physical complaints as supporting an "off-task" limitation. (Tr. 50, 55-56). Again, an ALJ need not fully credit subjective complaints if they conflict with the record. But given the existence of other reversible error requiring remand, the ALJ should reconsider this issue when re-evaluating Plaintiff's subjective complaints.

Last, Plaintiff suggests that her weekly counseling sessions could require her to miss work 2 or more days per month. Plaintiff points to no evidence that her appointments (many of which are telehealth appointments) could not be scheduled before or after work hours or during breaks, or that brief appointments would routinely require full-day absences on multiple days each month. The ALJ therefore did not err in declining to include a limitation for high rate of absenteeism based on the frequency of medical appointments.

### III. Conclusion and Order

In *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 173 (6th Cir.1994), the Sixth Circuit set forth "what a district court should do once a determination is made that an ALJ erroneously applied the regulation and the Secretary's denial of benefits therefore must be reversed." *Faucher* explained that a trial court "can reverse the decision and immediately award benefits *only* if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* at 176 (emphasis added). In general, an award of benefits should be made only if proof of disability is strong and opposing evidence is lacking, or where proof of disability is "overwhelming." *Id.* Consistent with *Faucher*, all essential factual issues have not been resolved and the current record does not adequately establish Plaintiff's entitlement to

13

benefits as of her alleged onset date. *Id*. at 176. Therefore, **IT IS ORDERED THAT** Defendant's decision is **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g), for further development of the record consistent with this opinion, that judgment be entered, and that this case is **CLOSED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge
